FILED
1/15/2015
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

RECEIVED
DEC 3 0 2014
12-30-14 —eu
THOMAS G BRUTON
ERK. U S DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

JAMES BAILEY, )
       )
       Plaintiff, )
       )
       )
       vs. )
       )
       )
HOLSTEN MANAGEMENT CORPORATION; )
PETER HOLSTEN, Individually and in his )
Official Capacity; and )
JACKIE TAYLOR-HOLSTEN, in her Official )
Capacity and Individually, )
       )
       Defendants. )

1:14-cv-10430
Judge Jorge L. Alonso
Magistrate Judge Maria Valdez

**JURY DEMANDED**

## COMPLAINT AT LAW

Plaintiff, JAMES BAILEY, ("hereinafter referred to as 'Plaintiff,'") representing himself pro se, do hereby submit his Complaint at Law against Defendants, HOLSTEN MANAGEMENT CORPORATION; PETER HOLSTEN and JACKIE TAYLOR-HOLSTEN ("hereinafter referred to as 'Defendants'"). In support thereof, Plaintiff states as follows:

## I. INTRODUCTION

Plaintiff stands before this Court seeking Judicial Review in regards to the method and manner utilized by Defendants in determining his continued fitness for employment. Plaintiff contends that the actions and subsequent loss of his employment was the result of arbitrary and capricious actions, which in effect, violated his right to due process and equal protection of the laws. In using an incident that never occurred based upon false statements of an employee that held authority over Plaintiff, Defendants violated Plaintiff's civil rights; and in using the words of an employee that provided a false statement against Plaintiff, when the employee was not a witness to inappropriate acts committed by Plaintiff, Defendants violated Plaintiff's constitutional right to equal protection. Plaintiff was accused of an unlawful act unrelated to his official work duties, thus, his situation should have been handled differently than a regular termination of an at-will employee. The *"Misconduct"* Defendants accused

Plaintiff of, never occurred and although security cameras remain in place at Plaintiff's former place of employment, Defendants failed and refused to check them to verify the accuracy of statements made against him. *"There should be absence of a rational connection between the facts found and the choice made. There should be a clear error of judgment; an action not based upon consideration of relevant factors and so is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law or if it was taken without observance of procedure required by law."* Natural Resources Defense Council, Inc. v. United States EPA, 966 F.2d 1292, 1297 (9th Cir. 1992)

> *"Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence." 5 U.S.C. § 7703(c);* Yates v. Merit Sys. Prot. Bd., *145 F.3d 1480, 1483 (Fed.Cir.1998).*

Based on the criminal element associated with the "misconduct" alleged against Plaintiff, a thorough investigation was to have taken place. *"Words injurious to plaintiff's business reputation are actionable per se and plaintiff may recover verdict for substantial damages without giving any evidence of pecuniary loss."* Slaughter v. Valleydale Packers, 198 Va. 339, 94 S.E.2d 260, (1956). Acting withing the scope of his employment, Maintenance Manager "Hector" went to Defendants with false allegations against Plaintiff and fraudulently enlisted the aid of others to carry out his intentional, willful and wanton actions in causing damage upon Plaintiff. Defendant's action were not taken in consideration of Plaintiff's age and ability to obtain future employment, and were so arbitrary and capricious that it was not in accordance with State and Federal law. Natural Resources Defense Council, Inc. v. United States EPA, 966 F.2d 1292, 1297 (9th Cir. 1992). Defendant's actions against Plaintiff were not supported by logic or the necessary facts to justify such judgment made against him. Further, Defendant's actions are the proximate cause of damages sustained by Plaintiff, to wit: lost wages, damage to his career and future earning potential; intentional infliction of emotional, mental suffering and distress, pain and suffering; violation of due process of the laws and equal protection; and

effectively denying Plaintiff access to employment opportunities within his chosen field that he had been deemed eligible to perform. This is a case of willful and wanton conduct by Defendants and an intentional combined effort to cause damage to Plaintiff; and damage was in fact inflicted and caused upon him. *"The Court of Appeals in Donato rejected the plaintiff's resulting 'liberty interest' claim, finding that "a decision not to reemploy, standing alone, does not deprive an employee of liberty. Special aggravating circumstances are needed to implicate a liberty interest," the Court concluded, such as "when the state fires an employee and publicly charges that she acted dishonestly, illegally, or immorally."*

## II. STATEMENT OF CLAIM

1. This is an action to vindicate violations of Plaintiff's civil and constitutional rights and to redress the unlawful and arbitrary and capricious actions and employment practices of the Defendants made against Plaintiff. This action further arises out of the wrongful discharge of Plaintiff on or about June 2, 2014.

2. Plaintiff alleges he was terminated from his employment based, in whole or in part, upon the arbitrary and capricious manner in which Defendants determined his continued fitness for employment.

3. In depriving Plaintiff of the right to a full investigation, the right to clear his good name, and the right to face his accuser(s), Defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq., 42 U.S.C. Sections 1981 and 1983, and the 5th and 14th Amendments to the U.S. Constitution.

4. The same right 'Caucasian' Manager Hector had to his job, Plaintiff, as an African-American, enjoyed that same right.

5. In taking action against Plaintiff based on false statements and Defendant's failure to investigate a potential crime alleged against Plaintiff, his civil and constitutional rights were violated.

*"For the employer to have a good faith belief that the employee has engaged in an act of misconduct, the employer must have adequately investigated the matter."* <u>Kestenbaum v. Pennzoil, Co.</u>, 108 NM 20, 766 P.2d 280 (1988)

6. On or about July 30, 2013, Plaintiff became employed at HOLSTEN MANAGEMENT GROUP. (Exhibit A) During his employment, Plaintiff performed his duties in a dedicated and professional manner.

7. On or around May, 2014, Defendants, after a company meeting, informed Plaintiff that "Manager Hector" felt threatened by him because he was admiring a wall decoration in an office at work.

8. A determination from those holding the proper authority and jurisdiction to conclude that Plaintiff acted improperly or engaged in "criminal" misconduct, was not made.

9. Plaintiff alleges many security cameras are situated where he once worked which will provide strict proof thereof that Defendants acted arbitrarily and capriciously when they: (a) failed to afford him the same protection as the Caucausian Manager "Hector;" (b) failed to afford Plaintiff the right to face his accuser; and (c) failed to conduct a full investigation into the accuracy of statements made against Plaintiff that led to the loss of his employment.

10. Plaintiff is an elderly man, thus, the likelihood of his finding future employment is drastically reduced especially considering the false allegations contained in his employee file. *"Sciolino contends that by placing false charges in his personnel file, which "may be available" to prospective employers, the City deprived him of Fourteenth Amendment liberty interests — in his reputation and his ability to obtain future employment — without granting him a name-clearing hearing. Like the district court, we believe that in order to state a claim under the Due Process Clause, a plaintiff must allege a likelihood that prospective employers will inspect his personnel file. Although Sciolino has no protected "property" interest in his employment with*

*the City, a public employer cannot deprive an employee of his "freedom to take advantage of other employment opportunities."* <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 573 (1972).

11. Defendant's lack of investigation and subsequent adverse action taken against Plaintiff were tainted, biased and based upon fraud.

12. As a result of Defendant's unlawful and arbitrary and capricious conduct, unlawful employment practices and violations of Plaintiff's rights protected by federal law, Plaintiff was discharged from his employment on or about June 2, 2014. (Exhibit B)

13. Defendant's wrongful conduct thereafter denied Plaintiff a fair opportunity to clear his name, deprived him of an opportunity to continue supporting his family, due process of the laws, and equal protection.

14. Plaintiff now seeks reinstatement of his position, monetary damages including back pay, front pay, if applicable, compensatory and punitive damages pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.; 42 U.S.C. Sections 1981 and 1983; and the 5th and 14 Amendment Rights of the U.S. Constitution. Plaintiff also brings tort claims under the common law of Illinois.

### III. PARTIES

15. Plaintiff, JAMES BAILEY, is a citizen of the United States who resides in the County of Cook, City of Chicago, State of Illinois. At all relevant times, Plaintiff was 55 years old and was an employee of Defendants within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq., and applicable case law.

16. Defendant, HOLSTEN MANAGEMENT CORPORATION is a real estate/housing corporation organized and existing under the laws of the State of Illinois, which regularly conducts business in the area of real estate and apartment rental of affordable housing.

17. Defendants procure funds from the U.S. Department of Housing and Urban Development.

18. At all relevant times, Defendants employed in excess of fifteen employees and was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.

## IV.  JURISDICTION AND VENUE

19. This is, in part, an action authorized and instituted pursuant to: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq. 42 U.S.C. Sections 1981 and 1983; and the common law of the State of Illinois.

20. The jurisdiction of this Court is predicated upon 28 U.S.C. Section 1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. This Court may also exercise pendant jurisdiction over Plaintiff's state law claims arising under the common law and statutes of the State of Illinois, and which arise from a common nucleus of operative fact pursuant to 28 U.S.C. Section 1367.

21. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. Section 1391(b), wherein Plaintiff resides, all Defendants regularly conduct business and where all the wrongful conduct occurred.

22. This Court has jurisdiction pursuant to 5 U.S. Code § 706.

23. Federal courts have exercised their inherent power of review over "arbitrary or capricious" agency action. Jordan v. Bolger, 522 F. Supp. 1197 (N.D. Miss. 1981), affirmed, 685 F.2d 1384 (5th Cir. 1982).

## V.  FACTUAL ALLEGATIONS

24. Plaintiff,   JAMES BAILEY, was employed by Defendant HOLSTEN MANAGEMENT CORPORATION on or about July 30, 2013 to perform the duties of a maintenance technician.

25. At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of Plaintiff's employment were governed and controlled by Defendants.

26. Upon information and belief and at all relevant times, all parties involved that were agents/representatives/employees of Defendants during the time of the occurrence, were acting as the agents, servants and/or employees of Defendant HOLSTEN. HOLSTEN MANAGEMENT CORPORATION is therefore liable for the acts and omissions of any and all individuals pursuant to the principals of ratification, respondeat superior and actual and/or implied agency.

27. Defendants listed Plaintiff's reason for being terminated from his position as: ***Misconduct*** (Exhibit C)

28. Manager Hector stated, "I saw he had picked up a machete and was pounding it against the palm of his hand" which is a false statement. Manager Hector was preoccupied with other workers and did not observe Plaintiff pick up the wall object.

29. Manager Hector's statement simply describe Plaintiff holding a wall object he was admiring that had no bearing on the conversation or the reason he wanted to speak to him.

30. As a matter of fact, Manager Hector's comments confirm Plaintiff's contention that he was holding an object prior to the parties speaking, and in the midst of talking, the object was returned to the wall.

31. Plaintiff had every right to "admire" a wall object and just because a machete was hanging on the wall, did not mean Plaintiff attempted to cause harm upon anyone.

32. Plaintiff being in the office to speak to Manager Hector was a first and he had never seen an object such as that one. As a gentleman that admire unusual objects, Plaintiff was simply looking at, and checking out something he felt was "really cool."

33. Manager Hector, knowing Plaintiff wanted his position, clearly states "I asked him if he was threatening me and he did not say anything." Indicating Plaintiff did not say "yes, I'm threatening you."

34. The fact that Manager Hector had to "ask" if he were being threatened says it all. Anybody that's being threatened with a knife, machete, weapon, will know they are being threatened, thus, the threat is not implied and was not made.

35. Plaintiff, therefore, was terminated based on a reason unrelated to his official work duties.

36. The "Misconduct" Defendants refers to did not relate to their line of business, thus, required a more in depth investigation.

37. The "Misconduct" Defendants refers to pertained to a criminal act upon another person. (Exhibit D)

38. Plaintiff went to the office to speak to Manager Hector concerning a better way of performing certain maintenance functions and procedures.

39. When Plaintiff arrived to speak to Hector, other employees were there to speak to him as well, so he awaited his turn.

40. While waiting, Plaintiff observed a wall decoration that caught his attention and moved to inspect it.

41. Plaintiff noticed the object was a machete type instrument and wondered why it would be out in the open such as it was. While observing the item, Hector became free to speak to Plaintiff.

42. Plaintiff went on to explain to Hector better options and methods in which the overall functioning of the maintenance could run better. He opposed ways that did not appear to be working in the best interest of the tenants.

43. Hector dismissed Plaintiff's suggestion and the parties returned to what they were doing. No hash words were exchanged.

44. In the midst of speaking to Hector, Plaintiff turned to place the object back on the wall where it was displayed.

45. A short time later, after a company meeting announcing a new property manager to employees, a staff member asked Plaintiff to remain behind.

46. Plaintiff was informed that Manager Hector was speaking to Plaintiff and "felt threatened" because he was holding the machete, when the conversation between the parties was not hostile.

47. What started out as a suggestion to improve operations, ended up as Plaintiff being accused of intimidating an employee when no tribunal, court of law, or competent authority of jurisdiction determined that Plaintiff committed a crime or acted inappropriately.

48. The same protection Manager Hector received (who is Caucasian) is not the same protection and equality Plaintiff received, who is (African American).

49. Defendants took the words of an employee that were false and used them against Plaintiff when there is a security method in place for the specific purpose of proving and verifying certain situations. *"Generally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior."* Clark v. Southview Hosp. & Family Health Ctr., 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994). (Exhibit E)

50. Because Defendants failed to inspect their own security system in place that would have provided strict proof thereof that fraud was committed, Plaintiff's continued fitness for employment was arbitrarily and capriciously determined and he was terminated when he was working towards advance within the Company.

51. At all relevant times, Plaintiff vehemently denied all allegations of misconduct. (Exhibit F)

52. The lack of investigation and Defendant's refusal to obtain the proof available to them that would have cleared Plaintiff's name, was biased and implemented in an unfair manner.

53. Defendants were complicit in aiding and abetting Manager Hector in retaliating against Plaintiff because he opposed certain operations of how maintenance was being performed.

54. Defendants knew or should have known that Manager Hector's allegations particularly with respect to Plaintiff, were false and motivated by self-interest and holding on to his own job.

55. Just a short time prior to the allegation, Plaintiff had expressed an interest in Manager Hector's job to Defendants.

56. In spite of said knowledge that no evidence existed of intimidation or improper behavior, Defendants terminated Plaintiff's employment as a result of Manager Hector's allegations.

57. Pursuant to the employment policies and procedures promulgated by Defendants, Plaintiff made them aware that the truth was on the cameras. Defendants took action against Plaintiff anyway.

58. Plaintiff had never been implicated in any allegations of intimidation, harassment, bodily harm, or threats on the life of any co-employees. As a matter of fact, it was Manager Hector that lodged a racial slur at Plaintiff (referring to him as 'nigger." However, when Defendants were informed of it, no action was taken. (Exhibit G).

59. There is no evidence that Manager Hector was truthful in his allegations made against Plaintiff.

60. Defendants knew or should have known that, after expressing an interest in Manager Hector's job, it was more likely than not that an attempt would be made to remove Plaintiff as a contender. (Exhibits H)

61. Contrary to its express employment policies, Defendants did not provide Plaintiff with the specific facts and information pertaining to the situation prior to terminating him and his termination was procured via fraud and Plaintiff's desire to "improve" upon Manager Hector's job. (Exhibit I)

62. Moreover, Defendants used and acted upon false statements against Plaintiff which was contrary to its employment policies. (Exhibit J)

63. No viable witness were brought forth to corroborate the accusations against Plaintiff and he was not even given the opportunity to clear his name and prove his innocence.

## VI.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF PLAINTIFF'S 5th AMENDMENT RIGHT
### *Defendant's Arbitrary and Capricious Actions Deprived Plaintiff of Due Process of the Laws*

64. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

65. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq., and 42 U.S.C. Sections 1981, 1983 and the 5th and 14th Amendments to the U.S. Constitution, for relief based upon the unlawful employment practices of the above-named Defendant.

66. The reason given for Plaintiff's discharge was a mere pretext for wrongful termination in that Defendants knew or should have known that allegations made against Plaintiff were uncreditable and uncorroborated.

67. That upon careful review of their own security system, Defendants would have learned of the fraud committed on behalf of Manager Hector and "Ronald."  The due process clause

prescribed *"the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions... It follows that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law."* Public Clearing House v. Coyne, 194 U.S. 497, 508 (1904).

68. The alleged event of a potential threat, intimidation or harassment of a co-worker by Plaintiff, in fact, never took place. This fact was known or should have been known to Defendant at the time of Plaintiff's discharge.

69. As a result of Defendants employment policies in investigating matters unrelated to official work duties and the function of their business, prior to terminating an employee, Plaintiff was unjustly deprived of equal and continued employment opportunities because he voiced his opposition of certain policies and procedures.

70. As a further result of Defendants stated actions, Plaintiff has been, is being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to him as an employee, but denied because of false statements made against him that were not fully investigated by Defendants.

71. Defendant's conduct was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

72. Furthermore, Defendants intentionally and/or with reckless indifference, engaged in the above stated illegal employment acts against Plaintiff contrary to his federally protected rights as guaranteed to him under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Sections 1981 and 1983.

73. The intentional conduct of Defendants complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive damages which will serve as an example and deterrent to Defendants and others who commit similar illegal acts.

74. As Defendants engaged in illegal employment practices with malice or with reckless indifference to Plaintiff's federally protected rights, he is entitled to punitive damages in addition to compensatory damages and other remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Sections 1981 and 1983.

**SECOND CAUSE OF ACTION**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, SEC. 2000 e-3**

***Defendants Retaliated Against Plaintiff by Creating a False Scenario***

***Because Plaintiff Opposed and Suggested a Better Process in Handling Maintenance Tasks***

*"It shall be an unlawful employment practice for an employer to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."*

75. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

76. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Sections 1981 and 1983, for relief based upon the unlawful employment practices of the above-named Defendant. Specifically, Plaintiff complains of Defendants' violation of Title VII's prohibition against wrongful employment acts based, in whole or in part, upon retaliation.

77. On information and belief, Defendants did not investigate the possibility of a solution that worked for all those involved since there was no evidence that Plaintiff acted inappropriately.

78. Defendants failed to put into place, an alternative method that would eliminate unfairness and bias from the system and procedures, which would have a less adverse impact on minority employees, and/or otherwise ensure the fair representation of minority interests.

79. As set forth herein, as a result of the lack of investigation out of which the allegations against Plaintiff arose, Defendants terminated him (the African-American) and not the Caucasian employee (the one that engaged in fraud).

80. As a result of Defendant's policies and practices, Plaintiff was unjustly and deprived of equal employment opportunities because he openly opposed certain work procedures.

81. As a further result of Defendants above stated actions, Plaintiff has been, is being and will be deprived of income in the form of wages and prospective retirement and subjected to severe emotional distress knowing at his age, it will be extremely difficult for him to find other employment.

82. Plaintiff also suffers from a hearing loss, thus, his future prospects for finding gainful and comparative employment is drastically reduced.

### THIRD CAUSE OF ACTION
### VIOLATION OF PLAINTIFF'S 14th AMENDMENT RIGHTS
### WRONGFUL TERMINATION
*Plaintiff Tried to Prove His Innocence Via Security Cameras, However,*
*Defendants Refused to View Them*
*Defendants Deprived Plaintiff of the Right to Face His Accuser and Equal Protection of the Laws*

83. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

84. Defendants promulgated express and written statements of employment policies, practices and procedure which it provided and disseminated to all of its employees, including Plaintiff. *"In Coltran v. Rollins Hudig Hall International, Inc., 948 P.2d 412 (Cal. 1998), the California*

*Supreme Court adopted what it called the "Scott-Pugh standard" for jury determinations in a particular species of wrongful discharge litigation, the implied agreement not to be dismissed except for "good cause."*

85. There was nothing good about dismissing a man where evidence shows he was presenting ideas, conducting meetings, proposing changes and trying to make a difference.

86. There was nothing good about dismissing a man due to the false implications and allegations of a co-worker who knew Plaintiff wanted his position.

87. There was nothing good about dismissing a man due to the words of an employee that was no where near the building at the time Plaintiff and Manager Hector discussed proposed changes in maintenance tasks. "Ronald" signed a document stating he was present.

88. Defendants represented, both orally and in writing, that it would treat employees in a specific, fair and equitable manner. Specifically, Defendants promulgated a policy that discharged employees would be provided with a fair, impartial and unbiased process in an attempt to hold on to their employment.

89. Defendants further represented, promised and/or implied both orally and in writing that an employee would only be discharged for cause, and after a reasonable investigation and opportunity to be heard.

90. The customary pattern and practice of Defendants was to follow its express and implied employment policies and practices, including the for cause and appeals process policies.

91. Furthermore, Defendants represented, promised and/or implied that it would investigate the allegations of intimidation, harassment and/or the threat of bodily harm against a co-worker in a fair, impartial and unbiased manner.

92. Plaintiff assented to Defendant's offer regarding the employment policies and procedures by accepting employment and via oral representations in such a way as to conclude the bargain.

93. Plaintiff's initial and/or continued employment with Defendant constituted acceptance of and consideration for Defendant's offer.

94. Defendants breached its contract with Plaintiff by its failure to follow its own practices, policies and procedures with regard to the terms and conditions of Plaintiff's employment as set forth herein.

95. As set forth herein, Defendants intentionally, willfully and/or maliciously breached its contract with Plaintiff to treat him in a fair, unbiased manner.

96. Defendants expected and/or should have reasonably expected Plaintiff's to rely on the aforementioned policies and procedures as a commitment by Defendants to follow and abide by them, including the for cause, hearings, determinations and appeals process policies.

97. Defendants failed to follow the aforementioned employment practices, policies and procedures. Specifically, Plaintiff was not terminated for cause in that Defendants did not properly determine whether or not there was cause.

98. Defendant's breach of contract in treating Plaintiff in an equal manner as other employees and affording him due process of Company procedures was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff and as set forth herein.

99. Defendant's conduct was willful and wanton, and Plaintiff is entitled to punitive damages in addition to compensatory damages, rehired to his position, back pay, front pay, and other remedies available under the common law.

## FOURTH CAUSE OF ACTION

### FRAUD

*Plaintiff's Loss of His Employment was Procured Through Fraud*

100.   Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

101.   Defendants owed and continues to owe a duty of care to third parties, and more particularly to their employees such as Plaintiff, to prevent their employees from acting in any way to harm co-employees. *"It is well settled that in appropriate cases, the federal courts may grant relief from prior actions, decisions and judgments obtained by fraud."* Marine Ins. Co. v. Hodgson, 11 U.S. (7 Cranch) 332 (1813); See FED. R. Civ. P. 60(b)

102.   Defendants had a further duty to ensure that complaints of misconduct were properly handled and an investigation conducted in a fair, impartial manner pursuant to Sections 1, 4 and 5 of Defendant's Employee Handbook.

103.   Defendants breached their duty of care owed to Plaintiff when they refused to view security cameras and take action against employees set on causing harm to Plaintiff.

104.   Without the proper investigation, Defendants therefore, aided and abetted their representatives in damaging Plaintiff.

105.   Defendants were complicit in the damages sustained by Plaintiff to wit:

   a.   Failing to properly and adequately train its managerial employees;

   b.   Failing to carefully and diligently supervise its employees to prevent them from providing false "criminal" statements against others;

   c.   Failing to implement and/or take appropriate remedial action once it knew or should have known that its employees could possibly be providing false information about Plaintiff;

   d.   Failing to conduct a reasonable, proper and appropriate investigation;

e.    Failing to abide by its own express and implied employment policies and procedures; and

g.    Failing to exercise reasonable care under the circumstances.

106.    Defendants conduct was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

107.    Because Defendants' conduct toward Plaintiff was improperly motivated, and was intentional, willful and wanton, Plaintiff is entitled to punitive exemplary damages in addition to compensatory damages.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT

*Defendants Breached Their "Employee Handbook" Contract / Promise to Treat Plaintiff With Fairnes, To Afford Him Due Process and Equal Protection*

108.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

109.    Defendant's promised Plaintiff, as a new employee, that they would be fair, unbiased; that they would treat him with respect and would not stand in the way of his right to due process and equal protection. The promise came via Holsten Management's Employee Handbook.

110.    The contract is a legally enforceable promise. Defendants presented their promise in the form of a "Commitment," and based on that, the Handbook Document identified as Plaintiff's "Exhibit J," is a contract. The Restatement (Second) of Contracts (1981). *"The hallmarks of enforceable employment promises are consideration and promissory estoppel. The spirit animating promissory estoppel is detrimental reliance, and courts commonly look to an employee's reliance when determining whether or not a promise should be enforced."* See, e.g., Black v.Baker Oil Tools,

Inc.,107 F.3d 1457, 1461 (10th Cir. 1997)

> *The first is the unilateral contract theory, first proposed by a state supreme court in 1983 in Pine River State Bank v. Mettille, 333 N.W.2d 622, 115 L.R.R.M. 4493 (Minnj. 1983), a seminal opinion not only for Minnesota but for the entire country. See, e.g., Ex parte Graham, 702 So. 2D 1215 (Ala. 1997) (unilateral contract analysis made personnel policies manual an enforceable contract, where there was an offer which provided specific disciplinary actions and the manual contained no disclaimers);*

> *The second is the "instinct with obligation" theory set forth by the Michigan Supreme Court in In re Certified Question (Bankey v. Storer Broadcasting Co.), 443 N.W. 2D 112 (Mich. 1989)  The idea is that the employer gains benefits from issuing the handbook in the form of a more loyal and productive workforce, thereby justifying legal enforcement of the handbook promises.*

111.     In failing to review surveillance footage concerning the time alleged on "Ronald's" signed document stating he witnessed a verbal exchange between Plaintiff and Manager Hector, Defendants violated Plaintiff's civil rights.

112.     Defendants, in failing to provide Plaintiff the same protections as Manager Hector, breached the Employee Contract entered into between the parties resulting in the damages to Plaintiff as stated herein.

## SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS
*At Plaintiff's Age and Due to His Hearing Loss,  And the Criminal Element of misbehavior In His Employee File, Plaintiff's Chances of Finding Other and Comparative Employment are Diminished*

113.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

114.     As set forth herein, during his employment with Defendants, Plaintiff was subjected to misconduct in the workplace based, in whole or in part, because he voiced a complaint and concern opposing certain operating procedures.

115.    At all relevant times, Defendants knew or should have known that Manager Hector's accusations against Plaintiff were false. Despite said knowledge, Defendants ignored the available evidence that would have cleared Plaintiff of any wrong-doing. *Sciolino's claim thus arises from the combination of two distinct rights protected by the Fourteenth Amendment: (1) the liberty "'to engage in any of the common occupations of life,'" Roth, 408 U.S. at 572 (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923)); and (2) the right to due process "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971); see also Paul v. Davis, 424 U.S. 693, 701 (1976) (explaining that an individual's liberty interest in his reputation is only sufficient "to invoke the procedural protection of the Due Process Clause" if combined with "some more tangible interest such as employment")*

116.    Despite the availability of actual and/or constructive knowledge that the accusations were unfounded, Plaintiff was suspended, written-up, disciplined for alleged infractions of company policy, and was terminated from his employment.

117.    Defendants, by branding Plaintiff as someone that would intimidate or cause bodily harm to another, acted intentionally, recklessly and/or with deliberate indifference to a substantial probability that severe emotional distress would result to Plaintiff.

118.    Defendants' actions towards Plaintiff evidence extreme and outrageous conduct.

119.    The extreme and outrageous conduct of Defendants towards Plaintiff was done in a willful and wanton manner, and constituted a disregard for the rights and well-being of Plaintiff.

120.    As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress.

121.    Because Defendants' extreme and outrageous conduct toward Plaintiff was improperly motivated, and was intentional, willful and wanton, he is entitled to punitive/exemplary damages in addition to compensatory damages.

## VII. DAMAGES

122.    The conduct of Defendants, as set forth herein, in violating Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq.; and 42 U.S.C. Sections 1981 and 1983; and the common law of Illinois, caused injuries, damages and harm to Plaintiff, including, but not limited to, past and future economic loss, past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life; and consequential losses.

WHEREFORE, Plaintiff JAMES BAILEY requests judgment and damages against Defendants, HOLSTEN MANAGMENT CORPORATION, jointly, severally and/or individually, as follows:

A.      A declaratory judgment that Defendants have violated Plaintiff's right to be free from wrongful employment acts in the workplace pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.; and 42 U.S.C. Sections 1981 and 1983; and the 5th and 14th Amendments to the U.S. Constitution.

B.      Enter an injunction ordering Defendants to make Plaintiff whole with full back pay, benefits and reinstatement to a position Mr. Bailey would have obtained in the absence of discrimination and/or wrongful acts, or in the alternative, front pay.

C.  An award to Plaintiff for compensatory damages in amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential loses;

D.  An award to Plaintiff for exemplary and/or punitive damages in an amount of $500,000.00 (Five Hundred-Thousand Dollars Per Count).

E.  Plaintiff do hereby requests the sum of $2.5 Million Dollars in the damages as stated herein.

F.  An award to Plaintiff of interest on any awards at the highest rate allowed by law; and

G.  Such other and further relief as this Court deems just and appropriate.

## PLAINTIFF REQUESTS TRIAL BY JURY ON ALL CLAIMS

Respectfully submitted this 30 day of December, 2014.

JAMES BAILEY

**JAMES BAILEY, pro se**
**PLAINTIFF**
**11303 S. COTTAGE GROVE**
**CHICAGO, IL 60628**

(708) 699-3682

## JAMES BAILEY

### VS.

## HOLSTEN MANAGEMENT CORPORATION,
PETER HOLSTEN, Individually and in his Official Capacity; and
JACKIE TAYLOR-HOLSTEN, Individually and in her Official Capacity

## **COMPLAINT EXHIBITS**

1. Exhibit A:    Letter of employment for James Bailey

2. Exhibit B:    Letter of Termination for James Bailey

3. Exhibit C:    Letter indicating James Bailey's Termination due to "misconduct."

4. Exhibit D:    Letter accusing James Bailey of immoral conduct

5. Exhibit E:    Fraudulent Statement used in terminating James Bailey. "Ronald" was no where near the site at the time he indicated on his signed statement. Security cameras will provide strict proof thereof that Ronald's statement that was used against Plaintiff, was in fact, false.

6. Exhibit F:    James Bailey's failed attempt to inform Defendants of the truth

7. Exhibit G:    Document detailing Plaintiff being referred to by the "N" word by Manager Hector

8. Exhibits H:    Document detailing Plaintiff had "better ideas" in regards to the work operations of the maintenance department and the manner in which Manager Hector performed certain tasks

9. Exhibit I:    Meeting notes indicating James Bailey's ideas as to *"What would you like to see Michael and Hector do differently to make the Dept run more smoothly"*

10. Exhibit J:    Document confirming Plaintiff read and understood Defendant's Employee Handbook which guaranteed fairness and equality to all individuals



HÖLSTEN

July 30, 2013

James Bailey
11303 S. Cottage Grove
Chicago, IL 60628

Dear James,

Thank you for your interest in joining the Holsten team. We are pleased that you have accepted our offer of employment with Holsten Management Corporation as Maintenance Technician. You will report to Candace Coe, Property Manager. Your start date will be Tuesday, July 30, 2013. In this position your compensation will be $17.31 an hour. This position will be considered temporary and a nonexempt position for purposes of federal wage-hour law, which means that you will be eligible for overtime pay for hours worked in excess of 40 in a given workweek. This offer of employment is contingent upon completion of a successful pre-employment background check and drug test.

You will become eligible for certain company benefits (medical, dental and life) the first of the month following 30 days of continuous service. Eligibility for our 401(k) program begins on your one year anniversary with Holsten. You will be entitled to receive vacation on an accrual basis (1 day per month of service up to 10 days) in your first year, in addition to 1 personal day and 5 sick days. Your work station will be located at our Hilliard location, 2030 S. State Street, Chicago, IL 60616. Our standard hours of employment are 8:30 a.m. - 5:30 p.m.

The first 90 days of employment are considered an orientation period that gives you and the company a chance to get to know each other. Your performance will be evaluated during this time to assess your potential for continued employment. This period also provides you with the opportunity to evaluate us as an employer. We encourage you to share your thoughts with your supervisor during your orientation review.

As your performance warrants, your responsibilities will be increased and/or changed. Based on your conversations with Jackie Holsten, you have demonstrated the intelligence, imagination and self-starting ability needed to interact with a range of persons. These qualities coupled with your experience, we believe, will make you a great success in this position.

1020 W. Montrose Ave.
Chicago, Illinois 60613
www.holstenchicago.com
312-337-5339 FAX 312-337-4592

Exhibit A   $1 \mathfrak{g}^3$

**James Bailey – Page 2**

We are excited to have you become a part of our team and we trust that you will find that this is the right opportunity for you as well.

This offer of employment, if not previously accepted by you, will expire seven days from the date of this letter, although additional time for consideration of the offer can be made available if you find it necessary. If you wish to accept the offer, please sign below and return the letter to me within the prescribed time.

We recognize that you retain the option, as does Holsten Management Corporation of ending your employment with Holsten at any time, with or without notice and with or without cause. As such, your employment with Holsten is at-will and neither this letter nor any other oral or written representations may be considered a contract.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Margaret McCoy
Human Resources Manager
Holsten Management Corporation
Tel: 312-274-9108
Fax: 312-337-4592

I agree to the terms of the employment set forth above.

Signature: _James H. Bailey_

Printed Name: _JAMES H. BAILEY_

Date: _8-16-2013_

1020 W Montrose Ave
Chicago, Illinois 60613
www.holstenchicago.com
312-337-5339 FAX 312-337-4592

Exhibit A   2 of 3

Logged in as MARGARET MCCOY (0405-2835)

| employee | administration | company setup | reporting | hiring |

**Holsten Management Corporation**

⊞ June 18, 2014

CONTACT US | TRAINING | HELP

Page Size: 25 ▼    Page: 1 ▼ of 11        << BAILEY, JAMES (9859) ▼ >>

List Terminated ☑

**Quick Search**

[          ] GO

**Notifications**

**Employee Information**

Employee Compensation

**Status/Position**
Check History
Check History Search
Salary
Tax Status
Benefits
Payroll Deductions
Salary/Status History
Form I-9
Print Tax Forms
Benefits Continuation

**Training & Skills**

**Performance Management**

**Forms & Documents**

## Status/Position ⊘

Cancel    Save

* Required Fields

| | | |
|---|---|---|
| Status * | Employee ID | Company Code |
| Terminated ▼ | 9859 | 0405-2835 |
| Date Hired * | Date Rehired | Employee Type * |
| 7/30/2013 | | ▼ |
| Seniority Date ⊘ | Benefit Date ⊘ | PTO Date ⊘ |
| 7/30/2013 | 9/1/2013 | 7/30/2013 |
| LOA Leave Date | LOA Reason | LOA Return Date |
| | ▼ | |
| Date Terminated | Termination Reason | Termination Type |
| 6/2/2014 | MISCONDUCT ▼ | Involuntary ▼ |

Div/Branch/Dept: *    [    ] [2111] HILLIARD SENIOR

Location: ⊘    Hilliard Senior (2111) ▼

Job Title:    MAINTENANCE TECHNICIAN ▼

Supervisor:    CANDACE COE

New Supervisor:    [    ] Search [              ▼]

Clock Number:    [    ]

Badge Number:    162

Pay Frequency: *    Bi-Weekly ▼

Work E-Mail:    [              ]

Work Phone:    [    ] Ext: [    ]

Fax:    [    ] Ext: [    ]

Cell Phone:    [    ]

Pager:    [    ] PIN: [    ]

Save

©2014 Paychex, Inc. All Rights Reserved.
Privacy Statement - Disclaimer - Trademarks

Exhibit A    3g3



June 2, 2014

James Bailey
11303 S. Cottage Grove
Chicago, IL 60628

Dear James,

Regretfully, this letter confirms termination of your employment with Holsten Management effective Monday, June 2, 2014.

You will receive the following compensation based on the information below:

- You will receive your earned payroll for May 18, 2014 through June 2, 2014 on Friday, June 6, 2014, with the regular payroll cycle. Your payroll check will be direct deposited into your checking account that is currently on file.
- In addition, you will receive (5) five days of earned unused vacation for 2014 on check date June 6, 2014.
- You will also receive an additional $1,384.61 (less all taxes and other required deductions) of severance pay (2 weeks). However, severance payments will be made available on the 8th day following signature of the Severance Agreement and General Release (see enclosed document for in-depth details).

Your current medical and dental insurance coverage will terminate on June 30, 2014. You are entitled to elect continuation of your medical and dental coverage at your own cost through COBRA. If you are currently enrolled in the insurance benefit plans, Affiliated Benefits Consultants will be administering the COBRA benefits, and they will be sending you information detailing what you will need to do whether or not you choose to continue your insurance coverage.

Please feel free to give me a call with any questions at (312) 274-9108.

Regards,

*Margaret McCoy*

Margaret McCoy
Human Resources Manager

1333 North Kingsbury Suite 305
Chicago, Illinois 60642
www.holstenchicago.com
312-337-5339 FAX 312-337-4592

Exhibit B   1 g 2

**Margaret McCoy**

| | |
|---|---|
| **From:** | Michelle Pitts |
| **Sent:** | Monday, June 02, 2014 11:59 PM |
| **To:** | Latrice Jefferson |
| **Cc:** | Hector Villalobos; Don Juhasz; Margaret McCoy; Jackie Holsten |
| **Subject:** | James Bailey |

Please be informed that James Bailey is no longer employed by Holsten Management effective today. I have arranged to meet with him at the site on Tuesday, June 3rd at 12:00 p.m. to return his uniforms and pick up any personal property he has in the office.

Michelle

Sent from my iPhone

*Exhibit B* 282

## TERMINATION CHECKLIST

Employee Name __James Bailey__    SS# __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__

Title __Maintenance Tech.__    Termination Date __6-2-14__

Hire Date: __7-30-2013__    Date of Birth _____

Termination Reason __Mis Conduct__

| Human Resources | Date/Initials |
|---|---|
| Payroll Change Notice Completed | ✓ MM 5-30-14 |
| Final Paycheck Paid _Pd on 6/6_ ✓ | ✓ MM 6-9-14 |
| Vacation Paycheck _Pd on 6/6_ ✓ | ✓ MM 6-9-14 |
| Severance Check (if applicable) | ✓ Pending |
| Terminated in Paychex | ✓ MM 6-9-14 |
| Deleted from Payroll/WC Spreadsheet(s) | DB 06/11/14 |
| Org Announcement company-wide | N/A |
| Exit Interview Conducted | N/A |
| Outstanding Company Loan | N/A |
| BC/BS Notified | ✓ MM Affiliated Benefits |
| Principal Notified _6/10/14_ | ✓ MM Affiliated Benefits |
| EyeMed Notified _6/10/14_ | ✓ MM Affiliated Benefits |
| Cobra Notification Sent ✓ _6/10/14_ | ✓ MM Affiliated Benefits |

| HR Files | Date/Initials |
|---|---|
| Active Personnel File Moved to Termed | D.B. 06/11/14 |
| Benefits File Moved to Termed | D.B. 06/11/14 |
| Time and Attendance Moved To Termed | D.B. 06/11/14 |
| I9 File Moved to Termed | D.B. 06/11/14 |

| IT | Date/Initials |
|---|---|
| Cancel Company Voicemail | ✓ Notafied (IT) |
| Cancel Network Access | ✓ Notafied (IT) |

| Company Property | Date/Initials |
|---|---|
| Uniform returned | |
| Office/bldg keys & fobs returned | ✓ MM |
| Garage clicker returned | N/A |
| Building tools returned | |
| Cell phone returned | ✓ MM |
| Real estate license returned | N/A |

Completed By __Margaret McCoy__    Date __6-2-14__

Exhibit C   172

## Holsten Standards Of Conduct

It is Holsten's policy to employ personnel who are willing and able to perform the functions of their jobs in a satisfactory manner, to observe the rules and regulations of Holsten, and to devote their time and attention to the business of Holsten during working hours. From time to time, it may become necessary to counsel or discipline employees who, for one reason or another, fail to observe the goals set forth above. This procedure is intended only as a guideline to the commonly accepted steps a Supervisor should take in correcting employee misbehavior. It should be remembered that most employees are counted on to exercise a considerable degree of self-discipline.

Employees may be expected to respond to positive leadership and timely communication from Supervisors. Disciplinary procedures should be used, whenever possible, in such a way and at such times as to reinforce in employees the desire to meet accepted standards of work and conduct. The responsibilities that employees are expected to assume are communicated during their orientation period by their Supervisors and should be re-emphasized by Supervisors as required. This fosters two-way communication and should leave no question in the employee's mind as to acceptable work standards or behavior.

The rules set forth below are intended to provide employees with fair notice of what is expected of them. Necessarily, however, such rules cannot identify every type of unacceptable conduct and performance. Therefore, employees should be aware that conduct not specifically listed below, but which adversely affects or is otherwise detrimental to the interests of Holsten, other employees, or business partners, may also result in disciplinary action or termination. Nothing in these rules is intended to modify the at-will nature of your employment with the company.

*Job Performance*

Employees may be disciplined or terminated for poor job performance, including but not limited to the following:

- Unsatisfactory work quality or quantity
- Poor attitude (for example, rudeness or lack of cooperation)
- Excessive absenteeism, tardiness, or abuse of break and lunch privileges
- Failure to follow instructions or Company procedures
- Failure to follow established safety regulations

*Misconduct*

Employees will be immediately terminated for misconduct, including but not limited to the following:

- Insubordination
- Dishonesty
- Theft
- Discourtesy
- Misusing or destroying Company property or the property of another on Company premises
- Falsifying or altering Company records, including the application for employment
- Interfering with the work performance of others
- Altercations
- Harassing, including sexually harassing, employees or business partners
- Being under the influence of, manufacturing, dispensing, distributing, using, or possessing alcohol or illegal or controlled substances on Company property or while conducting Company business

Exhibit C  292

Exhibit A

To who ever it may concern          5/21/2014

Hector Villalobos

On tuesday may 20, 2014 at about 1145 pm
James bailey came in the supply room at
2111 S. Clark to get supplies he needed for
his work orders. When I went to give him
the supplies, I saw he had picked up a
machete and was pounding it against the
palm of his hand. he then started to question
me about why Mr. Hernandez called him back to
work the day before to fix a broken lock
I told him because he was oncall. he then
said it was not fair he was a block away
from home and had to come all the way back
and he was the only one that has to do that
everyone else dont. I said to him that was
not true that everyone Including me at one
point or another has have to come back to work
he then started to argue with me how that was
not true that he was the only one to do that
and nobody else. he then went from pounding the
machete to pointing it at me, Saying it looks like
Im not getting anywhere with you and you aint going
to do anything about this Im going to have to take it
to corporate I then asked him if he was
threatening me ~~and~~ he did not say anything he turned around
put the machete down and walked out of the supply room

On Tuesday, afternoon around 1:45 Pm
I entered the supply room at 2111 to get
supplies from hector I Witnessed James
baily Arguing With hector about Coming back to
Work the Previous day, When I saw James baily
holding a Machetey and Poining it at hector When
asked James are you threating Me in which
James did not respond but Put the Machete
down and Walked Que.

Randal Henn
5-21-14

Exhibit E

On Tuesday May 20, about 9:00 oclock. I entered the supply room. There was employee getten supplies from Hector. As that employee left out, Three more came in as we all were conversing and I notice a machete on the wall, I remou it as we all continued talking. The other employees left the room. Hector ask what do I need? I responde I need to talk this issue I never got answer to, that was brought up several monthsago. I placed the object back from, were I got it. I spoke for anoth two mins, never raised my voice. The strongest statement I made is if we cant come with answer I would have to go over his head and Micheal.

Spoke with Micheal at about 2:00 that day. We talked over the issue. He mentioned the statement of going to the top. But at the end of the talk he said he would see what he could do. Thats all I was asking from the begining

James

Exhibit F 172

May 23, 2014


Michelle Pitts,


On Tuesday May 20, 2014 at about 9:00am I entered the supply room on the first floor of the 2111 building. There was an employee getting supplies from Hector. As that employee left out, three more came in. As we were all conversing, I noticed a machete on the wall. I removed it as we all continued talking. The other employees left the room then Hector asked what do I need? I responded I need to talk about this issue that I never got an answer to that was brought up several months ago. (the issue of me receiving workorders at 4:45pm that were placed much earlier in the day which extends my workday till after 5pm) I placed the item back from where I got it from. We spoke for another couple minutes and I left. He never answered me question and I never raised my voice or made any gestures toward him. The strongest statement I made is if we can't come up with answer I would have to go corporate.

That afternoon at about 2:00 Michael called me to his office we talked over the issue. He mentioned the statement I had made to Hector of going to corporate and he said he would do what he could. I thanked him and we both left his office.

*[signature: James H Bailey]*

Exhibit F 2 y 2

**Margaret McCoy**

| | |
|---|---|
| **From:** | Jackie Holsten |
| **Sent:** | Thursday, April 17, 2014 12:59 PM |
| **To:** | Michelle Pitts |
| **Cc:** | Margaret McCoy |
| **Subject:** | RE: Racial slur concern |

Thank you.

**From:** Michelle Pitts
**Sent:** Thursday, April 17, 2014 9:01 AM
**To:** Jackie Holsten
**Cc:** Margaret McCoy
**Subject:** Re: Racial slur concern

Understood. There has been a change in my schedule today. The inspection was rescheduled for Hamlin so I am headed to Pacesetter this morning. Alliant will be out on Monday to do a physical inspection (vacants and a few occupied). Notices will go out today and I just want to make sure the office is clean and organized.

Michelle

Sent from my iPhone

On Apr 17, 2014, at 8:45 AM, "Jackie Holsten" <jackieholsten@holstenchicago.com> wrote:

> I think we should agree to a group meeting without Michael Don J and Hector there. This will allow the appearance of no senior management as opposed to singling anyone out.
>
> Michelle you and I and Cynthia should attend for sure and I will consider if Margaret. If she does then this escalates to an investigation which I do not want at this time.
>
> We will compare calendars today.
>
> Jackie
>
> **Sent from iPhone**
>
>
> On Apr 17, 2014, at 7:40 AM, "Michelle Pitts" <michellepitts@holstenchicago.com> wrote:
>
> > Please see the email below. How do you want to handle this?
> >
> > Michelle
> >
> > Sent from my iPhone
> >
> > Begin forwarded message:

*Exhibit G* 1 of 2

**From:** Michelle Pitts <michellepitts@holstenchicago.com>
**Date:** April 17, 2014 at 7:39:42 AM CDT
**To:** James Bailey <JamesBailey@holstenchicago.com>
**Cc:** Margaret McCoy <margaretmccoy@holstenchicago.com>
**Subject: Re: Racial slur concern**

Good morning James,

Thank you for bringing this to our attention. Margaret and I will discuss this issue with Senior Management so that a date/time can be scheduled to meet with the Hilliard staff to discuss all concerns.

Michelle

Sent from my iPhone


On Apr 17, 2014, at 7:33 AM, "James Bailey" <JamesBailey@holstenchicago.com> wrote:

> Friday evening Janet and I were on our way out and Hector called me on my work phone. When I answered he said "what's up nigger". I asked him if he was drunk and he said "what" I asked again if he was drunk and he responded "James I didn't know it was you" then hung up.

> I have been busy this week but his constant disrespect is continuing. Michael speaks but he is careful in how he says things. I really think a group staff meeting needs to be held excluding them so everyone feels free to speak. For me whether they are there or not makes no difference but others fear them. Morale is very low at Hillard.

> James
> Sent from my iPhone

2

Exhibit G    292

**Margaret McCoy**

| | |
|---|---|
| **From:** | Jackie Holsten |
| **Sent:** | Tuesday, May 20, 2014 12:42 AM |
| **To:** | James Bailey |
| **Subject:** | RE: Maintenance Supervisors position |

James, thank you for taking the time to make your wishes known, and to offer your observations. I am in the process of evaluating Hilliard (among other sites) and how it functions so that I can suggest improvements and implement them. I will let you know when you can interview for a promotion and reassessment of your qualifications.

Thank you again for writing.

Jackie Holsten

Jackie Taylor Holsten, Senior Vice President/General Counsel Holsten Real Estate Development Corporation
1020 W. Montrose Avenue, Chicago, IL 60613
312/274-9114 office | 312/337-1952 fax | 312/274-9122 Assistant jackieholsten@holstenchicago.com |
www.holstenchicago.com

-----Original Message-----
From: James Bailey
Sent: Monday, May 19, 2014 11:52 PM
To: Jackie Holsten
Subject: Maintenance Supervisors position

I would like to put in my application for the job of maintenance supervisor at Hilliard Homes. I know I am prepared and am more qualified than the past two efforts as supervisor. I've earned the respect of all the maintenance and janitorial staff and respect them as employees and people. I have experience in training and supervising employees. Operating a property owned by a family name requires a family effort and support. When the Hilliard family atmosphere is created, absenteeism will go down and productivity will go up. Just improving community relations will reestablish the Hilliard Holsten name.

The job of a supervisor is not over after eight hours and it probably takes 10 hours onsite and unlimited after hour input until stability is reached. I have this commitment.

I would hope to have the opportunity to discuss this proposition with you in person.

Sincerely

James Bailey Jr.

1

Exhibits H 195

**Margaret McCoy**

| | |
|---|---|
| **From:** | Michelle Pitts |
| **Sent:** | Friday, May 09, 2014 9:05 AM |
| **To:** | Michael Hernandez |
| **Cc:** | Hector Villalobos; Don Juhasz; Margaret McCoy; Jackie Holsten |
| **Subject:** | Re: James Bailey |

I've already spoken to him and he is aware of the meeting.

Thank you

Michelle

Sent from my iPhone

> On May 9, 2014, at 9:02 AM, "Michael Hernandez" <MichaelHernandez@holstenchicago.com> wrote:
>
> Okay. I'll let him know.
>
> -----Original Message-----
> From: Michelle Pitts
> Sent: Friday, May 09, 2014 9:01 AM
> To: Michael Hernandez
> Cc: Hector Villalobos; Don Juhasz; Margaret McCoy; Jackie Holsten
> Subject: James Bailey
>
> Good morning Michael,
>
> Please be advised that James Bailey has been scheduled to meet with HR at Corporate this morning and will need to leave the site at 10:00 a.m.
>
> Michelle
>
> Sent from my iPhone

1

Exhibits H 2 of 5

**Margaret McCoy**

| | |
|---|---|
| **From:** | Jackie Holsten |
| **Sent:** | Wednesday, April 23, 2014 8:58 PM |
| **To:** | Margaret McCoy |
| **Cc:** | Michelle Pitts |
| **Subject:** | Re: Meeting Request |

Ok. I will do that and update you.

Sent from iPhone

On Apr 23, 2014, at 12:40 PM, "Margaret McCoy" <margaretmccoy@holstenchicago.com> wrote:

Redacted 8/20 ILCS 40/10(d)

**From:** Jackie Holsten
**Sent:** Tuesday, April 22, 2014 8:39 PM
**To:** Margaret McCoy
**Cc:** Michelle Pitts; Jackie Holsten
**Subject:** Re: Meeting Request

Respond to James and ask him if my coming to Hilliard to meet with staff and not include Michael Hector or Don Juhasz will suffice or does he still want to meet with HR first?

Thanks.

Sent from iPhone

On Mar 28, 2014, at 11:37 AM, "Margaret McCoy" <margaretmccoy@holstenchicago.com> wrote:

Hi Cynthia and Michelle,

I received a call this morning from James Bailey requesting a meeting with Human Resources to discuss working conditions and management concerns at Hilliard. I have not called him back as of yet, however, I do intend to return his call to set-up the

1

Exhibits H    375

meeting to discuss his concerns further. Also, James mentioned in his message that other staff members have the same concerns as his. Please let me know your availability for the meeting next week. At which point, I will call him back to confirm a meeting time and location.

Thanks!

Margaret McCoy, PHR | Human Resources Manager
Holsten Management Corporation | 1020 W. Montrose Ave., Chicago, IL 60613
P: 312-274-9108 | Fax: 312-337-4592
Margaretmccoy@holstenchicago.com
www.holstenchicago.com

Exhibits H 4y5

**Margaret McCoy**

| | |
|---|---|
| **Subject:** | Meeting Request – James Bailey |
| **Location:** | Corporate Office 1020 |
| | |
| **Start:** | Thu 4/3/2014 3:00 PM |
| **End:** | Thu 4/3/2014 4:00 PM |
| **Show Time As:** | Tentative |
| | |
| **Recurrence:** | (none) |
| | |
| **Meeting Status:** | Not yet responded |
| | |
| **Organizer:** | Margaret McCoy |
| **Required Attendees:** | Michelle Pitts; Cynthia Stewart; Margaret McCoy |

Mr. Bailey requested a meeting with HR to discuss working conditions at Hilliard as well as management. I would like your attendance as well.

Thank you.
Margaret McCoy

1

Exhibits H  575

4/2

1.)

~ Michael Bailey Requested a mtg w/HR
- Margaret McCoy, Michelle Pitt

- Micheal Hernandez Per James has
created a hostil environment, stated he
writes them up constantly w/out
notifying them or giving them notice.

- Mentioned Look-out got a call @ 7:40 - 4/2
arrived @ the site @ 8:35p (approximately)
Well under an hour - (allowed 1 hour.
for travel time.)

Agenda: #1
- Sgt Anderson phoned Michelle Pitt
to inform. "Hostle Work Environment"
was written up for taking (2) hours. Which
was incorrect. Doctor verified that he
was there w/him

- He says people are calling off sick not b/c
they dont want to deal w/ Michael.
- Michelle asked who they are and/or take
their directives from and said to Doctor.
"Management Styles"
- work orders are not structured & no direction
there is also a "Trust factor"

Exhibit I    152

Staff Mtgs).     M Baileys Mtg. 2).

Staff Mtg are typically - are @ 7:00 + he starts at 8:00.

Michael + Lynn are the only (2) that invited or involved in the Staff Mtgs.

- michael

What w you like to see michael + treats do differently to make the Dpt run more smoothly

he disrespected "Sgnt Anderson". Jackie witnessed him disrespecting Sgnt

after this... the write up started to come.

My opinion -
Lines, feels that he being picked upon.

Exhibit I    282

### HOLSTEN MANAGEMENT CORPORATION
### EMPLOYEE HANDBOOK
### ACKNOWLEDGEMENT

I have received a revised copy of the updated policies for my Employee Handbook. I understand that I am responsible for reading the updated and/or new policies replacing them in my Employee Handbook with this revised version, and complying with the revised policies.

These Employee Handbook policies supersede and replace the former Employee Handbook policies contained in the Employee Handbook.

I understand that neither the updated or new policies in the Employee Handbook nor any other written or verbal communication by a management representative is intended to in any way to create a contract of employment for any specified period of time, and that these polices are for informational purposes only. I also understand that the updated and/or new policies do not affect my employment-at-will status, which permits Holsten or me to terminate the employment relationship at any time, for any reasons, with or without notice.

If I have questions regarding these policies, or the content or interpretation of any policy in the Employee Handbook, I will bring them to the attention of the Human Resources Department.

*JAMES H. BAILEY JR*
NAME (PRINT)

*James H. Bailey Jr.*
EMPLOYEE SIGNATURE

*07-30-13*
DATE

Exhibit J